FILED
2019 Mar-22 AM 09:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| **CHERRI EVON HUDSON,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| v. | ] | 4:17-cv-01262-ACA |
| | ] | |
| **SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION

Plaintiff Cherrie Evon Hudson appeals the decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL REVERSE AND REMAND** the Commissioner's decision for further administrative proceedings.

## I. PROCEDURAL HISTORY

On July 8, 2015, Ms. Hudson applied for a period of disability, disability insurance benefits, and supplemental security income benefits. (R. 358–59, 362–63). She alleged that her disability began on December 17, 2012. (*Id.* at 358, 362). The Commissioner initially denied her application and she requested review

by an Administrative Law Judge ("ALJ"). (*Id.* at 234–37, 265). After holding a hearing (*id.* at 55–78), the ALJ issued an unfavorable opinion (*id.* at 37–48), which Ms. Hudson requested that the Appeals Council review (*id.* at 356). On May 25, 2017, the Appeals Council denied her request for review. (*Id.* at 1–4). The Commissioner's decision is now final and ripe for judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.  STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Where the ALJ denies benefits and the Appeals Council denies review, [this court] review[s] the ALJ's decision as the Commissioner's final decision." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks and alteration omitted).

"Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Henry*, 802 F.3d at 1267 (quoting *Winschel*, 631 F.3d at 1178). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at

2

1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir.2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Hudson had not engaged in substantial gainful activity since her alleged disability onset date of December 17, 2012.

3

(R. 39). She found that Ms. Hudson' depression, anxiety, and degenerative disc disease of the lumbar spine were severe impairments but that the swelling in her legs and feet, varicose veins, sleep disorder, and plantar fasciitis were not severe. (*Id.* at 39–40). The ALJ also found that although Ms. Hudson claimed she had knee pain, post-traumatic stress disorder, and obsessive compulsive disorder, those were not medically determinable impairments. (*Id.* at 40). The ALJ concluded that Ms. Hudson did not have an impairment or combination of impairments that met or medically equalled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 42–43).

> After considering the evidence, the ALJ determined that Ms. Hudson had
>
> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant can lift twenty pounds occasionally and ten pounds frequently, sit at least six hours in an eight-hour workday and stand and walk in combination at least six hours in an eight-hour workday. The claimant can bilaterally handle frequently. The claimant can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. The claimant can frequently balance, stoop, kneel, crouch, and crawl. The claimant can do no work around unprotected heights and can have only occasional exposure to extreme cold and to vibrations. The claimant is limited to simple, routine tasks. The claimant can have occasional contact with the general public and can work on an occasional basis with coworkers and supervisors, i.e. can work in proximity to but not in team-type positions.

(R. at 42–43). Based on this residual functional capacity, the ALJ found that Ms. Hudson was unable to perform any past relevant work. (*Id.* at 47).

Relying on testimony from a vocational expert, the ALJ concluded that jobs existed in significant numbers in the national economy that Ms. Hudson could perform, including housekeeper, laundry worker, and electrical accessory assembler. (R. at 47). Accordingly, the ALJ determined that Ms. Hudson had not been under a disability as defined in the Social Security Act from December 17, 2012 through the date of the decision on February 8, 2017. (*Id.* at 47–48).

## IV. DISCUSSION

Ms. Hudson makes five arguments in support of her claim of disability, but this court will address only one of those arguments. She contends that the ALJ failed to adequately consider her testimony about the side effects of her pain medication, causing the ALJ to ask the vocational expert a hypothetical question that did not encompass all of her limitations. (Doc. 11 at 31–32). The court agrees.

The evidence shows that a doctor had prescribed Ms. Hudson oxycodone with instructions to take one ten milligram tablet three times per day. (*See* R. 453). Ms. Hudson testified that she usually took the medication two or three times a day and that the only problem she had noticed the oxycodone causing was drowsiness. (*Id.* at 66, 70–71). Her attorney asked her: "[H]ow long does that sensation of fatigue last when you take those pills?" (*Id.* at 70). She responded: "I would say about a [sic] hour, but I usually try to lie down about two or three hours . . . to get

5

off my feet." (*Id.*). She also testified that in a week, she would "try to lie down to get off [her] feet" for five days. (*Id.* at 70–71).

The ALJ's questions to the vocational expert did not include any need to take breaks for naps. Instead, the ALJ asked the vocational expert whether any positions would be available for a hypothetical individual of similar age, education, and past work history as Ms. Hudson with the following restrictions:

> [A]n individual who could lift 20 pounds occasionally, 10 pounds frequently; who can sit at least six hours during an eight-hour work day and stand and walk, in combination, at least six hours during an eight-hour work day. This hypothetical individual would be able to handle, on both the left and the right, on a frequent basis. The individual could occasionally climb ramps and stairs; should never climb ladders, ropes, or scaffolding. The individual could frequently balance, stoop, kneel, crouch, and crawl. The individual should avoid working at unprotected heights. The individual should only be exposed to extremes in cold and extreme vibration on an occasional basis. The individual would be restricted to simple and routine tasks which involve only occasional contact with the general public and would be able to work only on an occasional basis with coworkers and supervisors, that being defined as the ability to work in proximity to others but not on team-type positions.

(*Id.* at 75–76). Ultimately, the ALJ found that Ms. Hudson's limitations were the same as the limitations used in the hypothetical question. (*Compare id.* at 42–43 *with id.* at 75–76). The decision further stated that "[t]he claimant did not testify to any side effects from her medication at the hearing." (*id.* at 44).

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the

claimant's impairments."  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  But the ALJ is "not required to include findings in the hypothetical that the ALJ has properly rejected as unsupported."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004); *see also McSwain v. Bowen*, 814 F.2d 617, 619–20 & n.1 (11th Cir. 1987) (holding that the ALJ did not err in asking a hypothetical question that assumed the only restrictions that the evidence supported and omitted other restrictions).

Ms. Hudson contends that the ALJ's hypothetical question was incomplete because it did not include all of her limitations.  (Doc. 11 at 32).  She also argues that the ALJ failed to consider her testimony that the oxycodone she takes two to three times per day makes her drowsy for about an hour, causing her to lay down.  (*Id.*).  The Commissioner responds that the medical evidence contradicts Ms. Hudson's testimony.  (Doc. 13 at 22).

Had the ALJ found, either expressly or implicitly, that Ms. Hudson's testimony about the side effects of her medication was not credible, the court would be bound by that credibility determination.  *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) ("[C]redibility determinations are the province of the ALJ.").  But "where proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the [Commissioner's] decision, the ALJ must either explicitly discredit such testimony or the implication

7

must be so clear as to amount to a specific credibility finding." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983). In this case, the ALJ did neither. Instead, despite Ms. Hudson's unambiguous testimony that her oxycodone made her drowsy and led her to take naps during the day, the ALJ stated that she "did not testify to any side effects from her medication at the hearing"—a statement that is plainly incorrect. (R. at 44).

If the ALJ accepted Ms. Hudson's testimony that she had to take one or more naps during the day, her hypothetical question to the vocational expert may have been different, potentially leading to a different disability determination. On the other hand, if the ALJ found Ms. Hudson's testimony incredible, the question may not have changed and, therefore, neither would the ALJ's finding that Ms. Hudson was not disabled during the relevant time. But this court cannot make a credibility determination in the first instance; the ALJ must do it. *See Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986) ("The weighing of evidence is a function of the factfinder, not of the district court."). And because the court cannot know what the ALJ would have found as to the credibility of Ms. Hudson's testimony, the court cannot know if the hypothetical question included all of her limitations.

Given the lack of clarity about the credibility of Ms. Hudson's testimony and, therefore, the lack of clarity about the comprehensiveness of the hypothetical

question posed of the vocational expert, the court cannot find that substantial evidence supports the ALJ's determination at this point. Accordingly, the court **WILL REVERSE AND REMAND** the case for further proceedings.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this March 22, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE